**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Afrahkamelyase Aljanabi,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-20-01777-PHX-DWL<br><br>**ORDER** |

At issue is the denial of Plaintiff Afrahkamelyase Aljanabi's application for Supplemental Security Income benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 21 and 21-1,[1] "Pl. Br."), Defendant SSA Commissioner's Response Brief (Doc. 29, "Def. Br."), and Plaintiff's Reply Brief (Doc. 33, "Reply"). The Court has reviewed the briefs and Administrative Record (Docs. 15-3 through 15-11, "R.") and remands Plaintiff's case for an award of benefits.

I.  **Background**

Plaintiff is a 61-year-old Iraqi refugee (R. at 42, 146, 148) who cannot speak or write in English and has no work history. (*Id.* at 45, 156, 242.) Plaintiff has been diagnosed with the medically determinable impairments of hypertension, an untreated cerebral

---

[1]  Plaintiff's Opening Brief is docketed at Docs. 21 and 21-1. Doc. 21 covers pages 1-13 and Doc. 21-1 covers pages 14-29.

aneurysm, hyperlipidemia, hyperthyroidism, sleep apnea, thoracic degenerative disc disease, scoliosis, lumbar spondylosis, stage one chronic kidney disease, and obesity. (*Id.* at 17-19.) The Administrative Law Judge ("ALJ") also found that Plaintiff has non-medically determinable impairments of Alzheimer's disease, vascular dementia with behavioral disturbance, depression, anxiety, and post-traumatic stress disorder. (*Id.* at 15.) Dr. Higgins, a neuropsychologist who examined Plaintiff in June 2019, opined that Plaintiff's dementia was partly triggered by her cardiac disease history and possibly worsened by "significant traumatic events in Iraq," including militia attacks, an explosion that injured her daughter, witnessing the killings of friends and family, and seeing "dead bodies in the street." (*Id.* at 627-28.)

Plaintiff filed her application on August 26, 2016, alleging disability beginning on March 1, 2016. (*Id.* at 13, 146.) Plaintiff later amended the alleged onset date to October 8, 2016 (*i.e.*, her 55th birthday). (*Id.* at 13.) Plaintiff's claim was denied initially on January 18, 2017, and upon reconsideration on April 25, 2017. (*Id.*) On June 25, 2019, Plaintiff appeared before the ALJ for a hearing on her claim, and on January 7, 2020, the ALJ denied Plaintiff's claim. (*Id.*) The Appeals Council later denied Plaintiff's request for review of the ALJ's decision. (*Id.* at 1.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties.

II. **Legal Standard**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific

quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

III. **Analysis**

Plaintiff raises four arguments in this appeal. First, Plaintiff argues that the ALJ erred by rejecting Dr. Higgins's assessment of her mental impairment in favor of the nonexamining state agency reviewer's opinion. (Pl. Br. at 14-19.) Second, Plaintiff argues that the ALJ erred by rejecting Dr. Gordon's assessment of her physical impairment in favor of the nonexamining state agency reviewers' opinions. (*Id.* at 19-24.) Third, Plaintiff argues that the ALJ erred by rejecting her symptom testimony. (*Id.* at 24-28.) Fourth, Plaintiff argues that the improperly rejected evidence "should be the basis for [the] Court

to exercise its discretion to remand [Plaintiff's] case for award of benefits without remanding the cause for rehearing." (*Id.* at 28-29.)

For the following reasons, the Court agrees with Plaintiff that the ALJ committed reversible error—indeed, the Commissioner concedes this point—and further concludes that the appropriate, if unusual, remedy is to remand for the calculation and award of benefits. This conclusion is driven, in part, by the Commissioner's failure to meaningfully respond to some of Plaintiff's arguments.

A.   The ALJ erred when rejecting Dr. Higgins's opinions

Dr. Higgins opined that Plaintiff was experiencing "moderately severe cognitive decline and a moderate level of dementia." (R. at 627.) Although the ultimate question of disability belongs to the ALJ, Dr. Higgins also opined that Plaintiff's condition was "totally and permanently disabling" in that, for example, Plaintiff could not learn new information. (*Id.* at 629.) Dr. Higgins is an examining physician[2] (*id.*) whose opinion was disputed by another doctor (*id.* at 19). Thus, the ALJ could only reject Dr. Higgins's opinion by providing "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005.)

The ALJ gave Dr. Higgins's opinions "little weight." (R. at 21.) The ALJ's rejection was based on three reasons: (1) "Dr. Higgins was a one-time, non-treating source"; (2) Dr. Higgins's statement that Plaintiff's condition "was totally and permanently disabling [was] not a medical opinion, but rather an administrative finding . . . reserved to the Commissioner"; and (3) the "evidence of record," including imaging studies and Plaintiff's activities of daily living, was "not consistent" with Dr. Higgins's opinions. (*Id.*) Additionally, in other portions of the decision, the ALJ suggest that Dr. Higgins's opinions were not worthy of credence because: (4) his "diagnoses were largely based on the

---

[2]   "The law in the Ninth Circuit is that, although the ALJ must consider all medical opinion evidence, there is a hierarchy among the sources of medical opinions. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians." *Latahotchee v. Comm'r of Soc. Sec. Admin.*, 2021 WL 267909, *4 (D. Ariz. 2021) (cleaned up) (citations omitted).

- 4 -

subjective statements of" Plaintiff; (5) the record did not include treatment for mental impairments or objective evidence supporting the memory impairments; and (6) Plaintiff could perform basic tasks, and any interference with Plaintiff's ability to perform basic tasks was "attributed to pain and fatigue, and not a mental impairment." (*Id.* at 15-16.)

Plaintiff argues that the ALJ failed to provide adequate reasons for discounting Dr. Higgins's opinion that Plaintiff's dementia and other mental impairments caused her significant limitations. (Pl. Br. at 14-18.) In response, the Commissioner concedes that "Dr. Higgins's diagnosis of vascular dementia/Alzheimer's disease was not fully considered by the ALJ when she found that it was not a medically determinable impairment. Remand for proper consideration of this issue is warranted." (Def. Br. at 6.)

The parties agree, as does the Court, that the ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Higgins's opinions. Among other things, Dr. Higgins's evaluation was in fact based on more than Plaintiff's self-report. (R. 627 ["[Plaintiff] demonstrated neuropsychological symptoms . . . suggesting a cortical dementia process; that is to say, she exhibits classic symptoms of Alzheimer's disease . . . via a pattern of performance on neurocognitive testing."].) Additionally, assuming without deciding that Plaintiff was not treated for mental impairments,[3] the ALJ erred by finding there was no objective evidence supporting Plaintiff's memory impairments. Dr. Higgins's own evaluation is evidence of a medically determinable impairment. 20 C.F.R. § 404.1513(a)(2)-(3) ("The categories of evidence [include] . . . a statement from a medical source about what you can still do despite your impairment(s) . . . . [It also includes] [o]ther medical evidence . . . including judgments about . . . your medical history [and] clinical findings . . . ."); *see also Scroggins v. Astrue*, 598 F. Supp. 2d 800, 806 (N.D. Tex. 2009) (dismissing ALJ's "categorical assertion that there was no evidence or record of treatment for a mental impairment" in light of

---

[3] "Mental impairments" is undefined, so it is hard to review the ALJ's finding that Plaintiff was never treated. Plaintiff suggests the ALJ may be referring to "depression and anxiety," which Dr. Higgins stated contributed to the progression of Plaintiff's dementia. (R. at 627-28.)

contradictory evaluations from acceptable medical sources "who can provide evidence to establish the existence of a medically determinable impairment"). And although the ALJ raised Plaintiff's brain scans which "showed no age-matched hippocampal volume loss to suggest a neurodegenerative disorder such as Alzheimer's disease" (R. at 16), this finding does not contradict Dr. Higgins's opinion. To the contrary, the brain scan (*id.* at 454 [showing a "large aneurysm" and no evidence of a "*neurogenerative* disorder"]) can coexist with Dr. Higgins' findings of *vascular* dementia—of mixed etiology and symptomatically akin to Alzheimer's—aggravated by a cerebral aneurysm. (*Id.* at 627.) *See also* Mayo Clinic, *Vascular Dementia* (July 29, 2021), https://www.mayoclinic.org/diseases-conditions/vascular-dementia/symptoms-causes/syc-20378793 ("Vascular dementia symptoms vary . . . . Symptoms often overlap with those of other types of dementia, especially Alzheimer's disease dementia.").

The Court could go on, but because the Commissioner concedes that the ALJ erred with respect to Dr. Higgins, no further discussion is necessary.

B.    The ALJ erred when rejecting Dr. Gordon's opinions

Dr. Gordon observed that Plaintiff "demonstrated a high pain behavior and poor participation" and "a slow, shuffling and purpose-driven gait" during his examination and had a history of cerebral aneurysm which "may limit [Plaintiff's] mobility." (R. at 651, 657.) Dr. Gordon opined that Plaintiff's exertional capacities were consistent with "light" work but insufficient for "medium" work, as well as sitting for eight hours at a time and standing or walking for four hours at a time or for six hours of an eight-hour day. (*Id.* at 654-55.) Dr. Gordon is an examining physician (*id.* at 20) whose opinion was disputed by another doctor (*id.* at 19). Thus, the ALJ could only reject Dr. Gordon's opinion by providing "specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216.

The ALJ gave Dr. Gordon's opinion "little weight." (*Id.* at 20.) The ALJ's rejection was based on a single reason—that Dr. Gordon's examination "did not support these heightened limitations or a finding that the claimant had a severe impairment." (*Id.*) In

determining that Dr. Gordon's examination was "more consistent with reduced limitations," the ALJ noted a variety of Dr. Gordon's clinical findings that suggest good health. (*Id.* [*e.g.*, normal strength, normal fine motor skills, ability to stand, walk, and sit on the examination table].)

Plaintiff argues that "[t]his Court has repeatedly held that an ALJ's view of the medical evidence is not itself substantial evidence to support the agency's decision." (Pl. Br. at 22.) Plaintiff further argues that "normal findings related to [Plaintiff's] sensation, reflexes, fine motor skills, or ability to stand and walk during an examination does little to invalidate Dr. Gordon's assessment . . . . The ALJ gave little indication of why she requested a state agency physical examination in order for a doctor to discern [Plaintiff's] limitations with regard to [Plaintiff's] aneurysm, and then when presented with those limitations, decided they were invalid." (*Id.* at 21.) Plaintiff also asserts that the ALJ erred by assigning "great weight" to the opinions of nonexamining physicians that were irrelevant to Plaintiff's main impairments (aneurysm or dementia) and were completed before Dr. Higgins's or Dr. Gordon's reports were available. (*Id.* at 22-23.) Finally, Plaintiff argues that, if properly credited, Dr. Gordon's testimony would require a finding of disability as directed by the SSA's medical vocational guidelines, commonly known as "the grids." (*Id.* at 19, 20 n.10.)

The Commissioner responds that "the Court need not address this issue" in light of the concession of error regarding Dr. Higgins. (Def. Br. at 8.) Alternatively, the Commissioner asserts, in conclusory fashion, that "the ALJ provided appropriate reasons for discounting Dr. Gordon's opinion." (*Id.* at 7.) On this point, the Commissioner simply notes that the ALJ assigned "great weight" to state agency doctors who were well-versed in program requirements, reviewed the medical evidence of record, and accorded Dr. Gordon's opinion "limited weight" because it differed from the medical evidence of record as well as his own findings on examination. (*Id.* at 8.) The Commissioner concludes that "[w]hile Plaintiff may disagree with the ALJ's assessment of Dr. Gordon's opinion, this does not establish reversible error." (*Id.* at 8.)

Plaintiff replies that "the Commissioner provides no defense of the rationale the ALJ provided to discount Dr. Gordon's report. The Commissioner refers to the ALJ decision as 'explaining' reasons for rejecting Dr. Gordon's report, but the 'explanation' is an unsupported conclusion." (Reply at 7.) Moreover, Plaintiff notes that the Commissioner does not dispute that the limitations imposed by Dr. Gordon would require a finding of disability. (*Id.* at 8.) Finally, Plaintiff argues that the state agency reviewers did not deserve "great weight" because the reviewers only had access to medical records extending to April 2017, which did not include Dr. Higgins's or Dr. Gordon's reports. (*Id.* at 8-9.)

The ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Gordon's opinion. The Commissioner does not meaningfully interact with Plaintiff's arguments, but "generically cites [legal rules] . . . without attempting to explain" the ALJ's reasoning. *Latahotchee v. Comm'r of Soc. Sec. Admin.*, 2021 WL 267909, * 3 (D. Ariz. 2021). Nevertheless, the Court concludes that Plaintiff's arguments are correct.

First, even if nonexamining state agency reviewers "have program knowledge and are familiar with the program requirements" (R. at 19), the ALJ could not rely on the mere existence of contrary opinions by nonexamining sources as the reason for rejecting Dr. Gordon's opinion. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (amended Apr. 9, 1996); *see also Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1202 (9th Cir. 2008). Thus, to the extent the ALJ rejected Dr. Gordon's opinion solely because it conflicted with the reviewers' opinions, it was error to do so.[4]

Second, although the ALJ's remaining reason for rejecting Dr. Gordon's opinion—purported inconsistency with Dr. Gordon's examination findings—could potentially serve

---

[4] Given this principle, it is unnecessary to address Plaintiff's arguments attacking the persuasiveness of the nonreviewing examiners' opinions.

- 8 -

as a permissible basis for rejecting an examining physician's opinion, the ALJ failed to adequately explain why a finding of inconsistency was warranted here. In summary, Dr. Gordon made some normal findings, as well as some abnormal findings, and opined that Plaintiff would be subject to certain limitations in light of those findings. (R. at 651-657.) The ALJ made no effort to explain "why the abnormal findings do not support Plaintiff's [position] or why the normal findings should not be given more weight than the abnormal findings." *Curtis v. Comm'r. of Soc. Sec. Admin.*, 2018 WL 6418486, *7 (D. Ariz. 2018). Instead, the ALJ simply suggested that, in the first instance, she would have privileged the normal findings over the abnormal findings and imposed lesser limitations. (R. at 20 ["[T]he evidence of record in general was more consistent with reduced limitations."].) But "it is beyond the scope of the ALJ's authority to insert his or her interpretation of testing results in place of an examining physician." *Tate v. Acting Comm'r of Soc. Sec. Admin.*, 413 F. Supp. 3d 1003, 1009 (D. Ariz. 2019); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. . . . Common sense can mislead; lay intuitions about medical phenomena are often wrong.") (citations omitted).

   C. <u>The ALJ erred in rejecting Plaintiff's symptom testimony</u>

Plaintiff testified that she experiences two to three migraine headaches a week that could last for several days a time; poor memory; poor concentration; dizziness; vertigo; fatigue; and lower back pain with radiation to the posterior thighs and intermittent numbness in the lower extremities. (R. at 17-18.)

The ALJ rejected Plaintiff's testimony for several interrelated reasons. The ALJ found Plaintiff's allegations were inconsistent with: (1) Plaintiff's ability to sit and stand during examination; (2) Plaintiff's occasional denial of tiredness or fatigue; (3) Plaintiff's normal sensation, generally normal gait, and generally normal pulmonary functioning; (4) daily headaches for the past 15 years; (5) the fact that Plaintiff did not receive medication or therapy for dizziness; (6) Plaintiff's ability to drive short distances; and (7) occasional

inconsistent comments that Plaintiff felt well. (R. at 19.)

In her opening brief, Plaintiff argues that each justification is either insufficient or unsupported by substantial evidence. (Pl. Br. at 24-28.) In response, the Commissioner again states that "the Court need not address this issue" before asserting, in the alternative, that her response to Plaintiff's symptom-testimony challenge is "addressed above" in response to Plaintiff's opinion-related challenge. (Def. Br. at 9.)

This does not begin to approach a meaningful response to Plaintiff's arguments.[5] Thus, the Court finds this issue forfeited. *Latahotchee*, 2021 WL 267909, * 4 ("Defendant does not bother to address Plaintiff's argument . . . . Defendant therefore concedes the correctness of Plaintiff's argument on that point.").

In an abundance of caution, the Court further concludes that, even if the issue hadn't been forfeited, Plaintiff's arguments are correct: substantial evidence does not support the ALJ's rationale for rejecting Plaintiff's symptom testimony. An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*). If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Garrison*, 759 F.3d at 1015.

As for the first step, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (R. at 19.) As for the second step, the ALJ did not offer specific, clear and convincing reasons to reject

---

[5] The Commissioner also failed to meaningfully respond to some of Plaintiff's earlier arguments, so instructing the Court to "see above" only compounds the problem.

Plaintiff's testimony.

At the outset, the ALJ's statement that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent for the reasons explained in this decision" does not explain what symptoms are at issue or which normal findings contradict those unspecified symptoms. This generic statement, followed by an undifferentiated[6] list of normal findings, is not "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ's general findings are "insufficient" because the ALJ did not "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id. See also* Soc. Sec. Admin., Social Security Ruling 16-3P Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304, *8 ("We will explain which of an individual's symptoms we found consistent or inconsistent with the evidence in his or her record and how our evaluation of the individual's symptoms led to our conclusions.").

In sum, the ALJ erred by failing to provide any explanation—much less "specific, clear and convincing reasons"—for her decision to reject Plaintiff's symptom testimony and the Commissioner forfeited any defense on this issue by failing to meaningfully

---

[6] The ALJ does provide an explicit connection between symptoms and contradictory normal findings in two places: (1) "[a]lthough she reported headaches with elevated blood pressure, the claimant reported her headaches had occurred daily for the past fifteen years"; and (2) "[a]lthough she reported dizziness and vertigo, the claimant denied receiving medication or balance therapy." (R. 19.) As for the first example, the Court does not understand why the fact that Plaintiff has experienced headaches daily for fifteen years would detract from, rather than support, Plaintiff's symptom testimony. In any event, the ALJ did not attempt to provide such an explanation and the statement thus does not represent a "clear" reason to reject Plaintiff's symptom testimony. As for the second example, to the extent the ALJ partly relied on Plaintiff's failure to seek treatment for dizziness and vertigo, this was not error. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.") That said, standing alone, this evidence only addresses a subset (dizziness and vertigo) of symptoms associated with Plaintiff's undisputed cerebral aneurysm, for which she also endorsed migraine headaches and poor memory. (R. at 17.) This Court may not affirm the Commissioner "simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d at 675.

respond to Plaintiff's arguments.

### D. The appropriate remedy is to remand Plaintiff's case for calculation and award of benefits

There was no vocational expert ("VE") testimony in the case. (R. at 13, 142 [explaining that the expert appeared but did not testify].) Instead, the ALJ concluded that Plaintiff did not have a severe impairment or combination of impairments. (*Id.* at 17.) Nevertheless, the Court may still remand for benefits where it is clear from the record that the claimant cannot perform gainful employment even without specific VE testimony establishing that a person with a claimant's functional limitations cannot sustain work. *Benecke v. Barnhart*, 379 F.3d 587, 593-96 (9th Cir. 2004) ("Requiring remand for further proceedings any time the vocational expert did not answer a hypothetical question addressing the precise limitations established by improperly discredited testimony would contribute to waste and delay and would provide no incentive to the ALJ to fulfill her obligation to develop the record."). Such testimony is normally required to establish a claimant's entitlement to benefits, but it is not required in every case. *Id.* Here, the record and the improperly discredited evidence establish that Plaintiff is entitled to benefits.

The credit-as-true rule determines whether a case should be remanded for benefits. The rule, if applied here, would result in remand of Plaintiff's case for a calculation and payment of benefits. *Garrison*, 759 F.3d at 1020. It applies if each part of a three-part test is satisfied. *Id.* First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id.* Next, the ALJ must have failed to provide sufficient reasons for rejecting the claimant's testimony or medical opinions. *Id.* Finally, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled. *Id.* Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

First, the record has been fully developed and further administrative proceedings

would serve no useful purpose. Plaintiff's testimony and the opinions of her examining providers thoroughly detail her functional limitations. Second, the ALJ failed to properly evaluate Plaintiff's symptom testimony and the examining opinions, and the Commissioner largely fails to defend the ALJ's reasoning. Third, Plaintiff's testimony and her providers' opinions establish that if the improperly discounted evidence were credited as true, she would be entitled to benefits, even in the absence of VE testimony specifically considering her functional limitations.

The Commissioner requests a remand so the ALJ may consider Dr. Gordon's and Dr. Higgins's opinions alongside contrary opinions from nonexamining doctors, who did not impose limitations. (Def. Br. at 11.) But both examining physicians have opined to disabling limitations, and a nonexamining doctor's opinion on its own does not constitute substantial evidence. *Lester*, 81 F.3d at 831. Upon remand, the ALJ would properly credit Dr. Higgins's and Dr. Gordon's opinions and review the whole record, while resisting the temptation to insert her own "interpretation of testing results in place of an examining physician." *Tate*, 413 F. Supp. at 1009. The Commissioner does not offer,[7] nor can the Court find, "substantial evidence" in the record that would allow the ALJ to privilege the nonexamining opinions over the examining opinions without committing legal error.

Dr. Higgins and Dr. Gordon both opined that Plaintiff has significant limitations. (R. at 626-38, 649-60.) Plaintiff's testimony was consistent with those opinions. (*Id.* at 180 ["I spend most of the day sleeping."], *id.* at 195 ["I do nothing spend all day sleeping and tired."], *id.* at 217 ["Laying down for the most part of the day because I feel fatigue all the time due to the blood pressure medications."].) And the Commissioner does not dispute[8] that Dr. Gordon's proposed limitations would direct a finding of disability under the medical-vocational guidelines. Thus, it is unnecessary to remand, as the Commissioner

---

[7] The Commissioner simply cites "other medical opinions and the other evidence of record." (Def. Br. at 11.)

[8] The Commissioner does dispute that the ALJ would be required to *adopt* Dr. Gordon's opinion, even if she credited it. As stated above, however, the Commissioner does not explain what additional evidence exists in the record that would allow the ALJ to privilege the opinions of non-examining experts over Dr. Gordon's opinion.

requests, for "further consideration of not only whether [dementia] is a medically determinable impairment but, if so, for how long it existed during the alleged period of disability." (Def. Br. at 7.)

Finally, the Court does not have serious doubt that Plaintiff is, in fact, disabled. Given Plaintiff's advanced age, inability to speak or write in English, nonexistent work history, and ill health, as well as the unanimity of the examining physicians and the four years that have elapsed since Plaintiff applied for disability, a remand for further proceedings—although the correct outcome in nearly all cases involving reversible error by an ALJ—would be unnecessary and inappropriate here.[9]

**IT IS THEREFORE ORDERED** reversing the January 7, 2020 decision of the Administrative Law Judge (R. at 11-22), as upheld by the Appeals Council (*id.* at 1-3).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for an award of benefits.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 17th day of February, 2022.

_____
Dominic W. Lanza
United States District Judge

---

[9] Because the Court remands for an award of benefits, it need not address Plaintiff's argument that the Commissioner forfeited the opportunity to request remand for further proceedings. (Reply at 2 n. 3.)

- 14 -